ROLAND R. MARCHANT AND ADDISON E. MULLI-
KIN *vs.* MADIE T. HUGHLETT.      MADIE T.
HUGHLETT *vs.* ROLAND R. MAR-
CHANT AND ADDISON E.
MULLIKIN.

*Contract of guaranty*: corporations; *ultra vires*; severable con-
tracts.   *Sale of stock*: warranty; breach; when
tender unnecessary; damages.

A vendee purchased 50 shares of the capital stock of a corpora-
tion, the vendors agreeing to "guarantee the assets of the cor-
poration to be equal in amount to $22,500," according to the
items and valuations contained in a certain statement, and to
indemnify the vendee from any loss arising from any dis-
crepancy therein; as a collateral guarantee the vendors gave
the vendee a note, executed by the corporation and endorsed
by themselves, for $4,000, payable in one year, with inter-
est; and a certain annual reduction of the principal of said
note was to be made at the option of the vendee; such reduc-
tion and interest were to be charged against the dividends
paid on the stock.   *Held that*: Although the agreement uses
the word "guarantee" in the indemnity clauses, the obliga-
tion upon the vendors was direct and not collateral; it is
not an undertaking to perform a duty in respect to which
another was primarily responsible.                    p. 237

Payment could be demanded only in the event that the stock
valuation warranted by the vendors should prove to have been
excessive.                                              p. 237

The agreement had represented that the assets of the company
were $22,500 in excess of liabilities; a short time after the
sale of the stock to the vendee the company went into liqui-
dation with only $4,700 of total assets; it was *held* that
under such circumstances it was improper to instruct the
jury that there was no evidence legally sufficient to warrant
any recovery on the indemnity.                          p. 238

The fact that the corporation was a party to the note and that its action may have been *ultra vires* did not relieve the vendors from their obligation for the consideration moving immediately to themselves.　　　　　　　　　　　　p. 238

The reductions upon the principal note were optional with the vendee; the note was not intended to be renewed indefinitely without regard to a breach of the warranty.　·p. 239

It was further *held* that the liability of the defendants under the agreement should be estimated by the value of the stock according to the statement and the measure of the value therein agreed upon by the parties.　　　　:　　　p. 240

The defendants were liable only to such extent as the evidence showed that the guaranteed value of the stock exceeded, if at all, its actual value at the time of the plaintiff's purchase.
p. 240

There is no need for the vendee to return or make a tender of the goods where it would clearly have been a mere formality.
p. 240

As it appeared that some of the reductions upon the principal of the note had been made on account of certain withdrawals made by the husband of the vendee, over and above his salary, as an employee of the company, it was *held* that, as the proof was inconclusive as to the justice of charging against the wife all reductions on the note, an instruction to that effect, without qualification, was improper.　　p. 241

In an action upon a note, evidence of the surrounding circumstances under which the note was given, is not a variance.
p. 239

*Decided May 10th, 1912.*

Two appeals in one record from the Baltimore City Court (ELLIOTT, J.).

The facts of the case are stated in the opinion of the Court.

The following are the defendants' prayers, including those that are referred to in the opinion of the Court:

*Defendants' First Prayer.*—The defendants pray the Court to instruct itself sitting as a jury, that there is no evidence

in this case legally sufficient to show that the defendants are
liable upon the promissory note sued upon, under the terms
of the agreement offered in evidence and entered into between
plaintiff and defendants on the twelfth day of June, 1906,
and that the verdict of the Court sitting as such jury must
be for the defendants. (*Refused.*)

*Defendants' Second Prayer.*—The defendants pray the
Court to instruct itself sitting as a jury, that from the undis-
puted evidence in this case, the promissory note sued upon
by the plaintiff was made in pursuance of a certain agreement
entered into between the plaintiff and defendants on the
twelfth day of June, nineteen hundred and six, and which
agreement provided that the defendants should guarantee the
value of 50 shares of the capital stock purchased by the
plaintiff of the S. M. Johnson and Son Coal Company, as
based upon the condition of the company as shown by the
statement of the first day of June, 1906, and it not having
been shown that the said statements or any of the items
thereof were untrue or inaccurate or that the condition of the
said company was other than that represented by said state-
ment on said first of June, 1906, the verdict of said Court
sitting as such jury must be for the defendants. (*Refused.*)

*Defendants' Fourth Prayer.*—The defendants pray the
Court to rule, as a matter of law, that if the Court sitting
as a jury finds from all the evidence that both the promissory
note sued on in this case and the agreement of June 12, 1906,
were executed by the S. M. Johnson & Son Coal Co., a cor-
poration; and shall further find that the said corporation had
no power to execute the said note and agreement, and that
the said corporation received no consideration for its said
acts, that then its verdict must be for the defendant. (*Re-
fused.*)

*Defendants' Fifth Prayer.*—The defendants pray the
Court to instruct itself sitting as a jury, that from the evi-
dence in this case it appears that the promissory note sued
upon by the plaintiff did not represent the real contract or

obligation entered into between the plaintiff and the defendants, and that at the time of this suit the amount of said note was not due by the defendants to the plaintiff, and that therefore the verdict of the Court sitting as such jury must be for the defendants. (*Refused.*)

*Defendants' Sixth Prayer.*—The defendants pray the Court to instruct itself sitting as a jury, that the promissory note sued on in this case is not the entire and complete agreement between the plaintiff and the defendants, but that the evidence in said case shows the agreement of June 12th, 1906, to be the contract and agreement between the said parties, the plaintiff and the defendants, and that there is a variance between the pleadings, and the evidence in this case, and the plaintiff is not entitled to recover thereon. (*Refused.*)

*Defendants' Seventh Prayer.*—The defendants pray the Court to rule as a matter of law, that if the Court sitting as a jury shall find that the promissory note sued on in this case was made pursuant to the terms of the agreement of June 12th, 1906, between the plaintiff and the defendants, and shall further find the defendants liable thereon, then the amount to which the plaintiff is entitled to recover must be limited to the amount of annual reductions and interest on said note due as provided in the said agreement. (*Refused.*)

*Defendants' 8th Prayer.*—The defendants pray the Court to rule as a matter of law, that if the Court, sitting as a jury, shall find from all the evidence that the promissory note sued on in this case was endorsed pursuant to the terms of the agreement of June 12th, 1906, between the plaintiff and the defendants, and further find the defendants liable thereon, then the amount to which the plaintiff is entitled to recover must be limited to the annual reductions and interest on the said note due as in said agreement provided, less any amounts received by the plaintiff or withdrawn by F. W. Hughlett over and above the salary of twelve hundred dollars ($1,200) per annum, as in the said agreement provided. (*Refused.*)

*Defendants' 10th Prayer.*—The defendants pray the Court to rule as a matter of law, that if the Court, sitting as a jury, finds from the evidence that the promissory note sued on in this case was endorsed by the defendants as a guarantee to the plaintiff of the value of the stock, according to the agreement of June 12th, 1906, between the plaintiff and the defendants, and if the Court so sitting as a jury shall further find that the plaintiff did not tender to the defendants the stock so guaranteed and offer to return the same upon the due date of the said note or subsequent thereto, then the verdict must be for the defendants. (*Refused.*)

*Defendants' 11th Prayer.*—The defendants pray the Court to rule as a matter of law, that if the Court, sitting as a jury, shall find from the evidence that the promissory note sued on in this case, was endorsed by the defendants pursuant to the agreement of June 12th, 1906, between the plaintiff and the defendants and others, and shall further find that on June 12th, 1906, the S. M. Johnson & Son Coal Company of Baltimore City, the maker of the said note, was a corporation, duly organized and existing under the laws of the State of Maryland, then the verdict must be for the defendants, unless the Court so sitting as a jury further finds that on the date of the maturity of the said note, or subsequent thereto, the plaintiff presented or caused to be presented to the defendants a renewal note for a sum not less than three thousand dollars ($3,000.00), and demanded of the defendants the endorsement thereof and the payment of the interest and reduction in accordance with the terms of the said agreement. (*Refused.*)

*Defendants' 12th Prayer.*—The defendants pray the Court to instruct itself sitting as a jury, that the undertaking of the defendants as contained in the contract of June 12th, 1906, between the plaintiff and the defendants, was to guarantee the value of the stock testified to in this case, according to the items and valuations in statement of June 1st, 1906, in evidence in this case, and to indemnify said plain-

tiff for loss arising from any discrepancies in said statement; and that liability of defendants, if any, under said agreement can only be estimated by value of stock according to said statement and the measure of value therein agreed upon by the parties to said agreement.   (*Refused.*)

The two causes were argued together before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*Richard S. Culbreth* (with whom was *Oscar Wolff* and *Chester F. Morrow* on the brief), for Madie T. Hughlett, appellant.

*Wm. H. Hudgins* (with whom was *James McEvoy, Jr.,* on the brief), for Roland R. Marchant and Addison E. Mullikin, appellees.

URNER, J., delivered the opinion of the Court.

This suit was brought by the plaintiff, as payee, against the defendants, as endorsers before delivery, of a promissory note made by the S. M. Johnson & Son Coal Company, a body corporate, for the sum of $3,500.00, dated June 17, 1907, and payable one year after date, with interest at six per cent.   At the trial it was proven that the note was given in renewal of a pre-existing one for $4,000.00 in pursuance of the terms of an agreement in writing executed on June 12, 1906, by the corporation just mentioned and by the defendants, Addison E. Mullikin and Roland R. Marchant, and their co-partners, William F. Applegarth, Jr., as parties of the first part, and by the plaintiff, Madie T. Hughlett, and her husband, Edward W. Hughlett, as parties of the second part.   The agreemnet recited that Mrs. Hughlett had contracted to purchase fifty shares of the capital stock of the Coal Company from the parties of the first part, and that they had agreed to guarantee the value of the stock and to elect Mr. Hughlett vice-president of the company.   It then

provided that in consideration of the premises the parties
of the first part "guarantee the assets of the S. M. Johnson
& Son Coal Company to be equal in amount to $22,500.00
according to the items and valuations of the statement of
the said company made as of the first of June, 1906, and
to indemnify the said parties of the second part for any
loss arising from any discrepancies in said statement." It
was further stipulated that "as a collateral guaranty to the
value of the fifty shares of stock purchased" by the plaintiff,
the Coal Company should give to the plaintiff its promis-
sory note for $4,000.00 payable one year after date," and
renewable from year to year upon the semi-annual payment
of the interest on said note at the rate of six per centum
and annual reductions of $500.00 from the principal amount
of said note, provided the said Madie T. Hughlett shall so
elect; any reduction so made and interest paid on said note
as aforesaid to be charged against the earnings of the stock
of the said Madie T. Hughlett;" and it was agreed that the
defendants and their co-partner, individually and as a firm,
should endorse the note at each renewal and that the plaintiff
should "agree to the several renewals of the said promissory
note in the manner and on the conditions hereinbefore set
forth." There was a provision for the election of Mr. Hugh-
lett as vice-president of the company and for the performance
by him of certain duties and for the payment to him of a
salary of $1,200 a year, with the right on his part to draw
$300.00 additional per annum, the latter amount, however,
to be charged against the earnings of the stock held by his
wife.

The financial statement mentioned in the agreement showed
assets of the company amounting in the aggregate to $69,-
304.98, including a pier property valued at $39,150.86, two
scows at $2,000.00, and accounts receivable to the amount of
$27,902.07. The liabilities, apart from the capital stock,
included a mortgage of $25,000.00 on the pier property and
$23,865.67 of accounts payable, making a total of $48,-
865.67. It appeared, therefore, from this statement that the

assets of the company amounted to $20,439.31 over and above its liabilities. The capital stock of the company authorized and issued at $25,000.00 was thus shown to be worth eighty per cent. of its par value, and it was upon this basis that the sale to the plaintiff was effected. Of the fifty shares included in the plaintiff's purchase twenty-five belonged to W. W. Johnson, president of the company, and twenty-five to the firm of which the defendant were members. The proceeds were paid to the company on account of debts due it by W. W. Johnson and the defendants' firm. After this transaction the partnership still owned one hundred shares of the company's stock. It was agreed that these shares and those acquired by the plaintiff should not be sold except by mutual consent of the respective owners.

In April, 1908, a receiver was appointed for the company upon the ground of insolvency. The total amount realized from its assets was $4,742.06, and there remained for distribution to creditors, whose claims, including the note of the plaintiff, aggregated $27,550.66, a fund which produced a dividend of only ten per cent. Having thus sustained a loss on her stock, the plaintiff brought this action on the renewal note given under the agreement in order to secure the benefit of the indemnity for which it provided. The case was heard by the Court below sitting as a jury, and a verdict was rendered in the plaintiff's favor. There was evidence showing certain payments by the company to the plaintiff on account of the note, and various withdrawals by her husband beyond the amount of his salary, and these reduced the recovery to $1,755.57. The defendants excepted to the refusal of ten of the eleven prayers offered by them at the close of the case, while the plaintiff noted an exception to the granting of one of the defendants' prayers. The questions thus raised are before us on appeal by both the plaintiff and defendants from the judgment entered upon the verdict.

The principal theory of the defendants is that the agreement providing for the note in suit was intended only to

indemnify the plaintiff against any errors in the statement upon the faith of which her stock was purchased, and that the defendants could not be held liable in the absence of evidence showing that the statement was incorrect. It is contended that there is no evidence in the record to that effect, and that on the contrary the testimony of one of the defendants as to the accuracy of the valuations then made and submitted to the plaintiff stands without contradiction. It is accordingly insisted that the defendant's first and second prayers proposing that a verdict be entered in their favor on this ground should have been granted.

While the agreement in question uses the term "guarantee" in the indemnity clauses with which we are concerned, it is clear that the obligation imposed upon the defendants was essentially direct and not collateral. It does not present the elements of an ordinary guaranty, because it is not an undertaking to perform a duty with respect to which another is primarily responsible. 20 *Cyc.* 1397. The plain purpose of the agreement was to render the vendors of the stock liable to the purchaser for any loss arising from a possible over-valuation at the time of the sale. The promissory note for which the agreement provided was evidently designed merely as a medium for the enforcement of this liability. It was not intended that the note should represent any additional obligation. This is apparent not only from the fact that it is described as a collateral indemnity, but also from the provision that the interest payments and annual reductions should be chargeable to the earnings of the stock. It is perfectly clear, upon a reasonable construction of the agreement as a whole, that the plaintiff was to be entitled to demand payment of the note only in the event that the stock valuation warranted by the defendants proved to be excessive. There can be no doubt also that the liability of the defendants must be determined with reference to the value of the assets of the company at the time the plaintiff's purchase was consummated. The agreement evidently did not propose to hold the defendants accountable for a subse-

quent depreciation of the stock. It specifically referred to the conditions existing in June, 1906. But the question whether the resources of the company were correctly estimated in the statement upon which the plaintiff relied was not treated as one requiring immediate determination, and the provision for indemnity was obviously based upon the theory that subsequent developments might show that the vendors of the stock had been mistaken in their representation as to its worth at the time of the sale. The defendants' first and second prayers are not inconsistent with this view of the agreement, but they erroneously assume that there is no legally sufficient evidence in the case tending to prove that the statement referred to was inaccurate. Within two years after the indemnity was given, and within one year after the renewal note in suit was executed, the assets whose value had been warranted to be $22,500.00, in excess of the liabilities stated, produced, upon liquidation under a receivership, a fund of only $4,702.06. In view of this result, occurring so soon after the plaintiff's purchase, it could not be held that the evidence was legally insufficient to sustain any recovery whatever upon the indemnity.

The defendants' third prayer was withdrawn. Their fourth prayer submitted the theory that the coal company, which was a party to the agreement and note, had no power to incur such an obligation, and that it received no consideration therefor, and that consequently the defendants are not liable. It is not necessary, upon this record, to consider whether the act of the corporate party was *ultra vires,* or invalid for any reason, because the defendants are not sought to be charged upon an obligation which the company primarily incurred and by which they were only secondarily bound, but are sued upon their own direct undertaking to indemnify the plaintiff with respect to a sale in which they were vendors and in the proceeds of which they shared. There is no principle of law which would relieve the defendants from the contractual liability thus assumed for a consideration moving immediately to themselves, even if the agreement and

note were held inoperative as to the corporation which joined in their execution.

The fifth, seventh, eighth and eleventh prayers embodied the proposition that the note sued on is not due under the terms of the agreement, because of the stipulation for renewals, and that in any event the plaintiff's recovery should be limited to the annual reductions and interest for which the agreement made provision and which had matured at the time of suit. This position is not tenable. It was clearly not intended that the note should be renewable indefinitely without regard to a breach of the warranty to which it was collateral; and it was made expressly optional with the plaintiff as to whether a reduction in the principal of the note should be required at any renewal period.

By the sixth prayer the objection is made that as the note upon which the suit is brought did not constitute the complete contract between the parties, and as the evidence showed that the agreement of June 12, 1906, defined their rights and liabilities, there is a variance between the pleadings and the proof which should defeat the plaintiff's action. This is not a case in which the plaintiff seeks to recover upon a different cause of action from that described in the declaration. While the agreement under which the note was given qualifies the absolute liability which the note indicates, yet the suit was brought and recovery was had upon the theory that the condition under which the note was to be enforceable actually existed. The evidence as to the agreement, with that tending to show a breach of the warranty, does not vary the cause of action, but has the effect of supporting the plaintiff's right to enforce the note as a distinct means of indemnity.

The tenth prayer sought to make recovery dependent upon a preliminary tender of the stock by the plaintiff to the defendants. As the stock is shown to have been valueless at the time it was claimed the tender should have been made, and as the defendants appear from the evidence to have denied absolutely their liability on the note, it is clear that a

tender, even if otherwise necessary, would have been a use-less formality, and certainly could not be held under the cir-cumstances of this case to have been a pre-requisite to the plaintiff's recovery. The record shows, however, that a ten-der of the stock was made at the trial.

The twelfth prayer proposed an instruction that as the defendants' undertaking was to guarantee the value of the stock according to the terms and valuations in the statement of June, 1906, and to indemnify the plaintiff for loss aris-ing from any discrepancies in the statement, the liability of the defendants, if any, under the agreement in evidence "can only be estimated by the value of the stock according" to the statement and "the measure of value therein agreed upon by the parties." As we understand the prayer it means that the defendants are liable only to such extent as the evidence may show that the guaranteed value of the stock exceeded, if at all, its actual value at the time of the plaintiff's pur-chase. This theory is in accord with what we consider the proper construction of the agreement, and the defendants were entitled to have their liability thus defined. The "loss arising from any discrepancies" in the valuation of the assets could not be correctly estimated without consideration of their real value at the period under inquiry. There was error in the refusal of this prayer.

In the ninth prayer, which was granted and which is before us upon an exception reserved by the plaintiff, the Court below ruled that if the defendants should be found liable on the note, then the plaintiff would be entitled to recover the amount of the note with interest, less the amounts shown from all the evidence to have been received by the plaintiff from the Coal Company since the renewal of the note and all withdrawals made by her husband over and above his salary, as provided in the agreement. The plaintiff objects to this instruction on the ground that it improperly charges her with sums received by her husband from the company and for which she insists that she ought not to be held responsible, and also with payments since the renewal

which she claims were made on account of the first annual reduction which resulted in the note being renewed at $3,500.

There is evidence in the record from which it might be inferred that some of the payments made to the plaintiff after the present note was given were applicable to an annual reduction which the renewal anticipated; and the proof is not conclusive in establishing a situation in which the wife was justly chargeable with all the withdrawals shown to have been made by her husband in excess of his salary. In this state of the record it could not properly be ruled without qualification that all the amounts to which the prayer refers in this connection should be deducted from the plaintiff's claim.

On account of error in the granting of the ninth and the refusal of the twelfth prayer the judgment will be reversed and a new trial awarded; but as both appeals have been successful, it is proper that the costs below should abide the result of the suit.

> *Judgment reversed and case remanded for a new trial, the costs in this Court to be equally divided between the plaintiff and defendants, the costs below to abide the final result of the case.*