ERNEST J. KNABE, JR., AND WILLIAM KNABE, TO
THE USE OF THE NATIONAL CITY BANK
OF BALTIMORE,

*vs.*

THOMAS H. BOWLES.

*Covenant and assumpsit. Written instruments: parol evidence;*
*when admissible.*

In a suit in covenant, the plaintiff must stand by the terms
of the instrument which he sets up; in order to rely upon a
new and independent contract, suit should be in *assumpsit.*

p. 478

A written contract of sale for a great number of shares of
stock did not contain any provisions as to the time for deliv-
ery; it was known at the time that all of the stock had been
hypothecated by the vendor with various banks as security for
various loans which had been made to him by them, and a cer-
tain amount of difficulty in delivery had been anticipated; under
such circumstances, it was *held,* that parol evidence tending to
show that some of the stock was not to be delivered until a cer-
tain lawsuit had been terminated, did not vary the provisions of
the written contract, and that the evidence was admissible.

pp. 484-485

While parol evidence is ·not admissible to vary the terms of a written contract, yet such evidence may be admitted to prove some collateral independent fact, or agreement, between the parties, about which the written contract is silent.   p. 484

*Decided June 24th, 1914.*

Appeal from 'the Court of Common Pleas of Baltimore City.   (ELLIOTT, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Albert E. Donaldson* (with whom were *Robert Crain* and *O. F. Hershey* on the brief), for the appellant.

*Stuart S. Janney* (with a brief by *Ritchie, Janney. Griswold* and *Hamilton*), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a judgment in an action in covenant, whereby the appellants sought to recover damages from the appellee for breach of a contract under seal.   The action was instituted by Ernest J. Knabe, Jr., and William Knabe, and on the same day marked to the use of the National City Bank of Baltimore.

The declaration alleges that the appellants, the Knabes, entered into a contract, under seal, with the appellee, whereby the appellants sold and agreed to deliver, and the appellee purchased, not less than three thousand, one hundred and forty-five and, if possible, three thousand five hundred shares of the capital stock of the United Surety Company of Baltimore, at a price of fifty-nine dollars per share; that the appellee in part performed his contract by accepting and

paying for three thousand three hundred and twenty-eight shares, but had refused to fully complete his contract by accepting the remaining one hundred and sixty-seven shares, although the appellants were at all times able, ready and willing to deliver the said one hundred and sixty-seven shares, in accordance with the terms of the contract.

The appellee pleaded performance, and also filed special pleas, which, in substance, alleged that the appellants were not at all times able, ready and willing to deliver the 167 shares of stock, but, on the contrary, the appellants had declined to deliver the same, because of the fact that they had previously sold these same 167 shares to other persons, for a sum in excess of fifty-nine dollars a share, who however had refused to take the stock, and that the appellants had brought suit against them and had to retain the stock to await the outcome of that suit; and that the appellee had accepted and paid the appellants for three thousand three hundred and twenty-eight shares in full performance of his obligations under the contract; and that the appellants and the appellee had agreed, subsequent to signing of the agreement sued upon, that the amount of stock to be delivered thereunder should be three thousand three hundred and twenty-eight. The appellants joined issue upon the plea of performance and filed replications which traversed the special pleas.

The case was tried before the Court, sitting as a jury, and at the conclusion of the testimony for the appellants the appellee offered a prayer that under the pleadings there was no evidence sufficient to entitle the plaintiffs to recover. During the examination of witnesses, testimony as to an agreement between the parties as to the time of delivery of the one hundred and sixty-seven shares, had been admitted subject to exception. A motion was made to strike out all oral testimony of the plaintiffs' witnesses, which tended to modify, vary, change or extend the terms of the written contract sued upon. The Court granted both the motion to strike out the testimony and the prayer instructing a verdict

for the defendant. From the judgment entered upon the verdict this appeal was taken.

The main question arises upon whether the lower Court was correct in its ruling in striking out the testimony admitted subject to exception. If the testimony offered sought to establish a new agreement different from the sealed instrument sued upon, or if it were offered to vary, extend, enlarge or contradict the terms of the written contract, then, unquestionably, under all the authorities, it was inadmissible. The suit being in covenant the plaintiffs had to stand by the terms of instrument which they set up. If they wanted to rely upon a new and independent contract, the suit should have been in assumpsit. *Watchman* v. *Crook*, 5 G. & J. 239; *Franklin Ins. Co.* v. *Hamill*, 5 Md. 170; *Rice* v. *Forsythe*, 41 Md. 389; *Kribs* v. *Jones*, 44 Md. 396; *Balto. Perm. B. & L. S.* v. *Smith*, 54 Md. 187; *Orem* v. *Keelty*, 85 Md. 337; *Kendrick* v. *Warren Bros.*, 110 Md. 47. But the contention of the appellants is, that the testimony rejected by the Court did not tend to vary, extend or contradict the terms of the sealed instrument, but was offered as to a point upon which the contract was silent,—that of time of delivery. It is very often a matter of some nicety to determine whether, in a particular case, the parol evidence offered falls within the general rule, and few subjects have given rise to more difficult and perplexing questions for decision. It will be necessary, therefore, to examine in some detail the contract and the evidence offered and admitted, as well as that excluded.

It appears, from the testimony, that the Knabes were possessed of the majority of the capital stock of the United Surety Company, and that the corporation, in the year 1910, was in financial difficulties. All of the stock owned by the Knabes was deposited in various banks of New York, Philadelphia and Baltimore as collateral for loans amounting, in some instances, to one hundred and twenty-five dollars per share. One hundred and sixty-seven shares, then hypothe-

cated with the entire holding, had been sold to a New York firm at a price of one hundred and fifty dollars per share, and a suit was then pending to compel the purchaser to comply with its purchase. After numerous conferences, the Knabes, on the 16th of April, 1910, entered into a written contract with the appellee for the sale and purchase of not less than 3145 and, if possible, 3500 shares of this stock. At the time of signing the contract, a statement was given the appellee, showing the amount of the holdings of the Knabes, where deposited and the amount for which each block was pledged. The entire holdings, including the one hundred and sixty-seven shares, appears therefrom, to have been three thousand four hundred and ninety shares.

The contract is herewith set out in full:

"It is hereby agreed by and between Ernest J. Knabe, Jr., and William Knabe, of the first part, and Thomas H. Bowles, of the second part, as follows:

"1. Ernest J. Knabe, Jr., and William Knabe do hereby sell and agree to deliver to Thomas H. Bowles not less than three thousand one hundred and forty-five shares (3,145), and if possible three thousand five hundred (3,500) shares of the capital stock of the United Surety Company at the price of fifty-nine dollars ($59) per share.

"2. The said Thomas H. Bowles agrees to purchase and does hereby purchase said stock at said price, his undertaking in this regard being subject to a satisfactory examination of the outstanding risks of the Company, said examination to be begun on Saturday, April 16th, 1910, and concluded as soon thereafter as possible, but in no event later than May 1st, 1910.

"3. It is agreed that the sale to the said Knabe brothers of certain 'non-admitted assets,' as per resolution appearing on the minutes of the Executive Committee of the United Surety Company, shall remain in full force and effect with the following exceptions, to wit: The said Messrs. Knabe shall be relieved from the payment of the deferred payment of $25,000 there-

m provided for, and after the repayment to them of any balance due on the $75,000 paid on account of the purchase of said 'non-admitted assets,' with interest, they shall be entitled to receive one-third ($\frac{1}{3}$) of any amount that may be realized by the Company out of said 'non-admitted assets' over and above the original $75,000 with interest up to $25,000, as their share; the management and control of said assets to be in the Company exclusively.

"It is further agreed that if the United Surety Company shall realize from the demand notes receivable now owing to it a sum in excess of twenty-three thousand five hundred dollars ($23,500), then three-fifths ($\frac{3}{5}$) of such excess shall be paid to the Knabes as and when received.

"It is understood that the stock of the said Knabes is pledged with certain banking institutions, and said Bowles agrees to accept delivery of said stock on the orders of said Knabes to the said banking institutions, directing them to deliver the same upon the payment of fifty-nine dollars ($59) a share, such orders being accepted in writing by said banking institutions. And said Knabes do agree that they and their counsel will use their utmost endeavors to procure the delivery of said stock on the above terms.

"As a part of this agreement, the said Ernest J. Knabe, Jr., and William Knabe have placed their resignations as directors in the hands of O. F. Hershey, and have given to Stuart S. Janney and O. F. Hershey, jointly, an irrevocable proxy to vote the stock herein referred to pending the transfer of the said stock to the name of Bowles or his assignee.

"Witness the hands and seals of the parties hereto this 16th day of April, 1910.

"Ernest J. Knabe, Jr.    (Seal)
"Wm. Knabe.              (Seal)
"Thomas H. Bowles.       (Seal)

"Test: O. F. Hershey."

It will be noticed that the contract contains no provision as to the time the stock was to be delivered.

On April 25th, 1910, the appellee wrote the Knabes the following letter:

"April the 25th, 1910.

"Messrs. E. J. and William Knabe,

    "Baltimore, Maryland.

"Gentlemen:

"Referring to the contract between us of April 16th, for the purchase from you by me of 3,490 shares of the capital stock of the United Surety Company, beg to say that I will pay for the said stock at $59.00 per share, if delivered at the National Mechanics Bank on Thursday, April the 28th, 1910. It must be borne in mind that while you are to make every effort now and hereafter to deliver the full amount of 3,490 shares, at the same time the minimum amount to be delivered must be 3,145 shares. I call your attention also to the fact that partial deliveries will not be accepted and no part of the purchase money will be paid until all the stock—3,145 shares—is delivered.

"Very truly yours,

"(Signed)   T. H. Bowles."

The Knabes advised the different banking institutions, holding the stock, of the sale, and directed them to deliver same to the appellee, upon his paying fifty-nine dollars per share upon their loan. A great deal of difficulty was encountered in prevailing upon the banks to give up stock for this figure, when they had loaned so much money upon it, but by May 26th, 1910, three thousand three hundred and twenty-eight shares had been delivered, being all of the Knabe holding with the exception of one hundred and sixty-seven shares. It will be noticed that if the entire holding had been 3490 shares, according to the statement made at time of signing contract, that would have left but one hundred and sixty-two shares, but the correct number appears to have been 3495 shares.

The testimony admitted subject to exception was given by
Ernest J. Knabe, O. F. Hershey, attorney for the Knabes in
all the negotiations covering the deal and who assisted in
preparing the written contract and John F. Sippel, Presi-
dent of the National City Bank of Baltimore, one of the
appellants. In substance the testimony of the first two was
that on the day the contract was signed, before and after,
and on several occasions afterward the condition of the 167
shares, subject of the New York suit, was discussed by them
and the appellee, and it was agreed that those shares should
be delivered after the termination of that suit, in accordance
with the terms of the written contract, provided the Knabes
lost that suit and then would be in a position to deliver them.

Before the termination of that suit it was necessary to
take up the block of 167 shares from the bank where it was
hypothecated, and the appellee was asked to advance the
fifty-nine dollars a share upon it, and hold it subject to the
result of the suit. Mr. Hershey testified as follows in refer-
ence to that: "Q. What agreement, if any, was made as to
the final taking of the stock by Mr. Bowles? A. Mr. Bowles
not only agreed that he would take the stock but was very
anxious to have it and impressed on me the fact that under
the contract existing between himself and the Knabes that if
the Catlin & Powell suit were lost we were compelled to
deliver to him. Q. Was there any question raised at that
time of any kind as to the willingness or agreement by Mr.
Bowles to take that stock upon the termination of the Catlin
& Powell Company suit? A. None whatever. Q. And you
say he insisted that he was entitled to it? A. Yes; that the
Knabes should absolutely get out of the surety business and
not control a share of the stock."

After the refusal of the appellee to aid in financing the
167 shares, an effort was made to get a loan upon them from
the National City Bank, and this was accomplished after a
conversation had by Mr. Sippel with the appellee, who testi-
fied as follows:

"I explained to Mr. Bowles that Mr. Knabe wanted to make this loan on 167 shares at $59.00 per share, aggregating nine thousand and odd dollars, and that we didn't want to take this loan unless we were assured by him that he would take this stock upon the termination of the suit—that is, if they lost it. If the suit should be decided against them, he was to take it at $59.00 a share. If the suit should be won, we were to have the right to deliver it to Catlin & Powell, or whoever the party might be, at $150.00 per share. I asked him if that was the agreement and he said yes, and then I furthermore said I remember Dr. Carroll requested that—will you take this stock if the suit is decided against Knabe at $59.00 a share? And he said, Yes." Mr. Hershey testified as follows, as to the absence from the written agreement of a time for delivery:

"Q. In drawing the contract which provided for the sale and delivery of not less than 3145 shares of stock of the United Surety Company, and if possible 3500 shares, no time appears. Will you state, if you know, why no time of delivery was named? A. Because in the then existing condition of Mr. Knabe's affairs particularly in reference to the holding of that stock, it was impossible to know how soon delivery could be, and even uncertain whether delivery could be made at all at that price."

In January, 1912, the New York suit was finally decided against the Knabes, but in the meantime, January, 1911, the United Surety Company had gone into receivership, and upon the demand, February, 1912, of the appellants that the appellee take up the 167 shares of stock the appellee refused.

Did this testimony as to the agreement, as to when the 167 shares were to be delivered vary, extend, enlarge or contradict the terms of the written agreement? We are of the opinion that it did not, and that therefore it was admissible testimony, and its exclusion was an error.

The fact that the contract provides for a minimum and maximum number of shares to be delivered, is an indication.

when coupled with the further statement in the contract, that all the stock of the Knabes was hypothecated, that difficulty of delivery was to be anticipated.  It is clear that the appellee had full knowledge of the whereabouts of each and every share of the Knabe's holdings, and its susceptibility of delivery.  The contract is totally silent upon the question of time for delivery.  If therefore the parties had agreed subsequent to the signing of the contract as to when the subject matter of the contract was to be delivered, we do not understand that proof of this is inadmissible because it is not embodied in the instrument.  This proof would not tend to vary, extend, enlarge or contradict for any terms of the contract where there is no provision of time, whatever, for delivery.  And in the absolute absence of such terms such proof is entirely consistent with the terms of the written instrument.  The fact that delivery of these 167 shares was contingent upon the Knabes losing the New York suit, we do not think makes this verbal agreement an entirely new and distinct contract from the written one.  All of the stock was out of the hands and practical control of the Knabes, therefore, a great many contingencies must, from that very fact. have been contemplated, both as to the ability to deliver and the time of delivery.  And in our opinion this oral agreement did not create any new contract distinct from the written one, but merely, in effect, said that one hundred and sixty-seven shares of the whole number they had contracted about were involved in litigation, and as soon as they are released they were to be delivered under their contract.

The cases of *McCreary* v. *McCreary,* 5 G. & J. 147; *Creamer* v. *Stephenson,* 15 Md. 211; *Bladen* v. *Wells,* 30 Md. 577; *Paul* v. *Owens,* 32 Md. 402; *Stallings* v. *Gottschalk,* 77 Md. 429, are authority for the principle that parol evidence is admissible in a suit upon a written instrument to prove some collateral, independent fact, or agreement, between the parties about which the written contract is silent. In the case of *McCreery* v. *McCreery, supra,* this Court said

in speaking of parol evidence in relation to a suit upon a written contract: "Even if this were the case of a written contract signed by the parties themselves, the authorities are clear, that parol evidence is admissible to prove any collateral independent fact upon which the written agreement is silent; because such proof is perfectly consistent with and does not in the least tend to contradict, vary or explain the written instrument."

We have examined all the authorities cited by the appellee upon this point, and have found them to be in harmony with the above principle, they being cases where the proof was rejected because its admission would have had the effect to change the terms of the writing.

With this rejected testimony, as to the time of delivery, in the case there would have been legally sufficient evidence tending to support a verdict for the appellants, and we will therefore reverse the judgment.

> *Judgment reversed and new trial awarded, with costs to the appellants.*