THE ESS-ARR KNITTING MILLS, Incorporated,

*vs.*

EUGENE FISCHER,

Trading as the Maryland Bleach and Dye Works.

*Contracts*: *construction; surrounding circumstances; letters as evidence; impossibility.*

In general, difficulty, impossibility or inconvenience in the performance of a contract will not relieve the promissor.     p. 6

In construing contracts, courts may look not only to the language employed, but to the subject-matter and the surrounding circumstances.                                    p. 8

In a suit upon a contract, a letter written by the defendant, introduced in evidence to show that the defendant had not intended definitely to promise or bind himself, was held to be admissible.                                    p. 7

*Decided January 15th, 1918.*

Appeal from the Baltimore City Court.   (Heuisler J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Stockbridge and Constable, JJ.

*George Weems Williams* (with whom were *Marbury, Gosnell & Williams, George Winship Taylor* and *L. Vernon Miller,* on the brief), for the appellant.

*Isaac Lobe Straus,* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

The case out of which this appeal arose was a non-resident attachment, filed by the appellee, who conducted an establishment for the dyeing of yarns. The appellant was a manufacturer of sweaters and bought large quantities of yarns in the undyed state, and later had them dyed in various colors to suit its trade.

The short note contained the six money counts, and showed that $1,628.10 was claimed to be due from the defendant to the plaintiff for dyeing 9,000 pounds of yarn. The defendant dissolved the attachment by the filing of a bond, and filed the general issue pleas, together with a plea of set-off, wherein it claimed the plaintiff was indebted to it in the sum of $2,821 as damages arising out of the breach of a contract whereby the plaintiff agreed to dye 30,000 pounds of yarn for the defendant at 15 cents per pound, but that the plaintiff, after dyeing 1,790 pounds, under the contract, refused to dye any more yarn at 15 cents, and thereby compelled the defendant to have the balance of 30,000 pounds dyed by another concern at a cost of 25 cents per pound.

The claim of the plaintiff grew out of a different and later contract than that alleged in the set-off and was not connected in any way with it, it calling for yarns to be dyed separately in colors of rose, fawn and copenhagen, while the alleged contract for the 30,000 pounds called for cardinal, navy and maroon.

The trial resulted in a judgment for the plaintiff for the full amount of his claim, less interest; and from that judgment this appeal was taken. The record contains eight exceptions relating to the admissibility of testimony, and one to the ruling of the Court in granting the plaintiff's seventh prayer.

The only prayer granted on behalf of the plaintiff was one in which the jury was instructed that it was within their discretion to add interest to any verdict they might find for the plaintiff. The jury, in finding for the plaintiff, did not

allow interest, so, therefore, the ruling is immaterial, so far as this appeal is concerned. There was, in fact, no contention made by the defendant but that the claim of the plaintiff was correct, except for the set-off.

Both of the prayers submitted by the defendant were granted.

The alleged contract was made up of letters and conversations; and almost numberless letters between the parties were offered in evidence, without objection from either side.

The question of whether or not there was a binding contract between the parties was properly submitted to the jury to find, under the prayers of the appellant, and the jury found, by its verdict, that there was not. The contention, however, of the appellant is that, but for the admission of the testimony contained in its exceptions the jury, in all probability, would have found otherwise, and, therefore, reversible error was committed.

Before discussing the exceptions we think it well to set out in full the contents of a letter written by the appellee in answer to the first communication of the appellant to him, and which seems to have been at the inception of the dealings between the parties. It appears that a Mr. Carwithen, who described himself as a mill representative—that is, a salesman of the product of cotton mills—in order to further the sale of undyed yarns to those using them in their factories was in the habit of obtaining from dyers offers to dye quantities of yarn which he thought he had opportunity to sell to any manufacturer. On November 10th, 1915, he wrote to the plaintiff a letter, as stated therein, in confirmation of a conversation had with the plaintiff the previous day, in which he said that he had sold 20,000 pounds of yarn to the appellant, and which he was going to ship to the plaintiff to be dyed according to specifications, and quoting:

> "We have advised Mr. Rottenberg (President of defendant corporation) that you could take care of this quantity in Cardinal, Maroon, Brown and possibly

Navy. This is the understanding the writer had with
your Mr. Fisher, and when advising Mr. Rottenberg
that you could take care of this quantity, we told him
delivery could be over a period of three to four months.
If we are not right on this, please advise at once. We
are also forwarding a copy of this letter to Mr. Rotten-
berg."

On the following day the defendant wrote the plaintiff
that he had received from a Mr. Carwithen word that he had
arranged with him to dye yarns for the account of the de-
fendant, at 15 cents per pound. The answer to this was as
follows:

"November 16, '15.
"Ess-Arr Knitting Mills, Inc., Brooklyn, N. Y.
    "Mr. S. Rottenberg, Prt.
  "Dear Sir:
    "We are in receipt of yours of the 11th and noted
contents very carefully. Beg your pardon for not re-
plying to your favor before this, we are so busy and
short on help all around which may partly explain for
delay answering your favor of the 11th.
    "in reference to dyeing and coning your orders beg
to advise that we will do the best we can do to take care
of same, we are allready crowded with orders for sev-
eral months ahead, we will hire more help and do the
best we can do for your orders, in reference to prices
for dyeing 15 cts. per pd, for your colors we will see
how we make out on the deal, we refused that is did not
accept orders for 16½ cts. for dyeing 250,000 lbs. of
hosiery yarns for a cleveland Concern, dyes are very
high and very weak at the same time, for the greater
part of orders we have to fill we have no prices stipu-
lated—given **our** patrons work at cost.
    "Our prices for coning is about 2¾ cts for 6/1—
6/2—8/2 and 3 cts. for 11/1 yarns, 2% dct. 30 days,
F O B Baltimore, Md,
    "In reference to accepting further orders beg to ad-
vise that we shall be pleased to receive further orders

later on after finishing some of the first shipments to you, we would not legally bind ourself to make regular delivries of dyed Goods, we will do the best we can for all our patrons on delivry and prices, we had your samples before us apearantly they got mislaid and if not to much trouble would kindly ask you to send us other samples, we can furnish some 6/1 and 8/1 stock-dyed yarns on cones at 42 cts. 2% dct. 30 days, for prompt delivry, if interested shall be pleased to send you small samples of those colors.

"In reference to buying dyes beg to advise that we never had difficulties to buy dyes during the past 15 months, on the contrary we had more dyes as ever before, all our old stock is used up and we have to use goods bought in the open market and make out best we can—buying in from month to month as needed, we will advise you later part in the week further as to our ability to accept further dye orders,

"thanking you for orders given and assuing you that we will do our best to take care of and awaiting your further favors we remain

respy yours,

Maryland Bleach & Dye Works, F."

On November 19th the plaintiff again wrote the defendant in which he said:

"We will do the best we can do on your orders, and will make you an early shipment of goods."

Since the eight exceptions are practically all embraced in one legal proposition, we will set out the questions in the order in which they were asked, noting, however, that none was asked until the great mass of correspondence had been introduced in evidence.

"What was the capacity of your plant in November, 1915?"

"How many pounds of yarn was your plant equipped to handle a week in 1915, in November?"

"Was any change made in your business after the war broke out with reference to getting dyes ?"

"Tell his Honor and the gentlemen of the jury what this change was as made by the war ?"

"Where did you get dyes from in the summer and fall of 1915 ?"

"Where did you get that, that you did not have on hand ? The war caused the shortage and the difficulty in getting foreign dyes, and Mr. Robinson asks you where you got the dye that you used; you had some on hand, you said; now, where did you get the other that you had to use if you could not get it by importation ?"

"What dyes were you using at your dye house in November, 1915 ?"

"At any time later, up to and including the first day of May, did you get any dyes that would enable you to dye this yarn of the defendant at fifteen cents ?"

The contention of the appellant as to these exceptions is based upon a law of contract that is so generally and universally recognized that it can not be controverted—that is, that difficulty, impossibility or inconvenience in performing a contract, will not relieve the promissor. If that appeared to be the object in producing this testimony, we would not hesitate to declare it reversible error. But in the light of the testimony introduced previously, we think it was introduced for a proper purpose, and was therefore admissible.

As above stated, the claim upon which the plaintiff's suit was based was practically admitted to be just and correct; at the least, the record does not disclose that any dispute was made as to it, beyond the mere filing of the general issue pleas. But the main question required to be determined was, whether or not the counterclaim of the defendant, under the plea of set-off, was based upon a binding contract as set up. To establish that he never did enter into such a contract as claimed, the plaintiff introduced in evidence the whole of the correspondence between himself and the party contending for

the contract, and insists that from a proper understanding of those letters, and especially from the first one, it should appear that he could not have intended to bind himself to the performance of a contract as insisted upon by the defendant.

The letters from the beginning, including those of the appellant, show that they both knew of the serious difficulty in obtaining dyes, and their contents could not help but be an assistance to the jury in forming an opinion as to the attitude of the parties when they entered into this transaction.

The letter of the plaintiff, which we have quoted in full, states the difficulty which he had been having in the past with labor, the overcrowding of orders, the refusal of contracts at a better price than that with the appellant, the reluctance to bind himself to any regular deliveries, the fact that all of his stock of dyes was exhausted and the necessity of buying in the open market from month to month and "make out the best we can," and asserting time and time again "We will do the best we can for you," is a fair example of what runs through the whole of the plaintiff's correspondence.

It is obvious that this mass of correspondence was introduced, without objection, not for the purpose of attempting to establish that the alleged contract was difficult or impossible of performance, but to sustain what were his defenses to the claim of set-off, namely, that he did not make a contract to dye 30,000 pounds of yarn at 15 cents per pound, as contended by the plaintiff; that his entire undertaking was to do the best he could under existing conditions; that the fact of his knowledge of the dye market was a strong factor tending to show that he would not have entered into a binding contract to furnish goods at a price below what he had been offered elsewhere; that the letters and the actual condition of the dye market tended to show that he was doing the best he could.

The questions, the subject of the exceptions, were all asked upon the same lines of defense, as showing that the facts set

out in the letters were the actual existing conditions, and explanatory of the correspondence. Examination of the correspondence shows that each of the questions was pertinent to the issue arising from what he considered and was trying to establish as his understanding of his undertaking.

In *Merriam* v. *United States,* 107 U. S. 437, the Court said: "It is a fundamental rule that in the construction of contracts the courts may look, not only to the language employed, but to the subject-matter and the surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made." See also *Knabe* v. *Bowles,* 123 Md. 484; *Marchant* v. *Hughlett,* 118 Md. 239; *Advertising Co.* v. *Metropole Co.,* 91 Md. 61.

In *Reed* v. *Insurance Co.,* 95 U. S. 23, the Court said: "Although a written agreement can not be varied (by addition or subtraction) by proof of the circumstances out of which it grew and which surrounded its execution, yet such circumstances are constantly resorted to for the purpose of ascertaining the subject-matter and the standpoint of the parties in relation thereto. Without some knowledge derived from such evidence, it would be impossible to comprehend the meaning of an instrument, or the effect to be given to the words of which it is composed. This preliminary knowledge is as indispensable as that of the language in which the instrument is written. A reference to the actual condition of things at the time, as they appeared to the parties themselves, is often necessary to prevent the Court, in construing their language, from falling into mistakes and even absurdities." 1 *Greenleaf on Evidence,* sec. 277; *Taylor on Evidence,* sec. 1082.

We are of the opinion that no error was committed by the introduction of the testimony, and will accordingly affirm the judgment.

*Judgment affirmed, appellant to pay the costs.*