HENRY G. HOKE *v.* CHARLES U. MEHRING ET AL.
[No. 36, October Term, 1937.]

184

*Decided December 10th, 1937.*

The cause was submitted on briefs to BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Bruce. T. Bair,* for the appellant.

*Theodore F. Brown* and *A. Earl Shipley,* for the appellees.

MITCHELL, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court for Carroll County, passed on the 18th day of March, in the year 1937, perpetually enjoining the appellant from cutting and removing trees, wood, or timber of any kind from the premises of the appellees, located north or northeast of a certain ditch and line indicated on a plat filed in the cause, which ditch and line mark the north or northeast boundary of a lot designated on said plat as containing 16¾ acres and 38 square rods of land belonging to the appellees, and upon which lot the appel-

lees concede the right of the appellant to cut and remove trees, wood, and timber.

The bill of complaint alleges that the appellees are owners, as tenants by the entireties, of an entire tract of land, located in Carroll County, Maryland, and containing 160 acres and 44 square perches, and that on the 1st day of July, in the year 1936, acting through Charles U. Mehring, one of the complainants, they entered into an agreement with the defendant for the sale to him of timber on a certain woodlot, being a part of said entire tract, containing 15 acres, more or less, subject to certain exceptions set forth in the agreement duly filed in the cause as an exhibit.

The clause in the agreement which is the basis of the present suit is as follows: "Witnesseth, that the said Charles U. Mehring, the party of the first part, in consideration of the covenants and agreements hereinafter set forth, does hereby agree to sell and does sell to the said Henry G. Hoke, the party of the second part, all the growing trees on a certain woodlot owned by the said party of the first part, situated in Middleburg District in Carroll County, Maryland, and near the Taneytown-Keymar road, said woodlot containing about 15 acres more or less, saving and excepting: (a) all that portion of the said woodlot located on the northwest side thereof and divided from the southeast portion thereof by a ditch and which division line has been marked and established prior hereto by the said respective parties. (b) all growing trees the diameter of which are ten inches or less, measured at the stump, which are to be left standing."

The agreement further provides that the vendors are to receive all lops from the trees cut on the premises, and for the payment of the sum of $400 as the contract price for the timber sold.

It appears that, at the time the agreement was executed, there was no actual survey made for the purpose of establishing the correct area of the woodlot, but it is shown by the testimony of the appellee Charles U. Mehring that at said time it was estimated by him to contain 22 acres

in its entirety, and that the area embraced in the sale contained 15 acres. The fact that the entire acreage of the woodlot exceeded 15 acres was communicated to the appellant at the time of the execution of the contract is borne out by his testimony, as follows: "Q. You signed that contract? A. Yes, sir; I did. Q. Then you did understand that you were getting 15 acres of timber land? A. In so far as the other man said so, yes, sir. Q. You did understand it that way? A. I had to take his word for it, that was the only thing I had. Mr. Brown, don't understand me that I want to be contrary because I don't, but I don't want to get myself into something unless I know it to be a fact. Q. You signed this paper? A. Yes, sir, I did. Q. Didn't that say that contained about 15 acres, more or less? A. More or less. Q. Did you understand that to mean the whole woodlot had 15 acres in it or did you understand you were buying 15 acres? A. I am sorry, Mr. Brown, but I can't answer that question. Q. You can't answer the question? Didn't you a while ago say you understood it had about 18 acres in the whole thing? A. Mr. Mehring said so—18 or 20 acres. Q. Then that 15 acres there wouldn't have reference to the whole woodlot, would it? A. I understood he was keeping a small part of it, yes sir. Q. When you have testified you understood the whole woodlot contained 18 or 20 acres? A. Yes, sir. Q. Then you very well knew that that 15 acres which is mentioned in that contract did not refer to the whole tract of timber, did it? A. No; it did not refer to the whole tract. Q. You knew that that referred to what you bought, did you not? A. Well, it described it as more or less."

The record reveals that after this suit was filed, at the instance of the appellees an actual survey was made by the county surveyor of Carroll County; and by an accurate plat of the entire woodlot it is shown that the total area is 21 acres, 1 rood, and 10 square rods. For the purposes of this controversy the surveyor has subdivided the whole tract into three lots, which will hereafter be designated as lots Nos. 1, 2, and 3, respectively. Lot No. 1 embraces

the north or northwest section of the entire area, contains 1 acre and 27 square rods, and is partly separated from the remaining lots by a ditch, the general course of which is northeast and southwest, extending nearly across the entire woodlot. Lot No. 2 contains 3 acres and 25 square rods, and is separated from the remaining lot by a second ditch, the general course of which is northwest and southeast, and which also extends nearly across the woodlot. Lot No. 3, the remaining lot, contains 16¾ acres and 38 square rods, and is partly separated from lot No. 2 by the last-mentioned ditch.

It is contended by the appellant that the contract for the sale of timber to him by the appellees embraced lots 2 and 3; while on the other hand, the contention is made by the appellees that it embraced only lot No. 3. In other words, the disputed area between the contending parties is that substantially lying between the two ditches above mentioned, or lot No. 2, as hereinbefore designated.

In the absence of any testimony, it would seem at the outset that the contention of the appellant is more in accord with the strict wording of the contract than that of the appellees, for the obvious reason that the contract definitely excepts from its operation "all that portion of the said woodlot located on the northwest side thereof and divided from the southeast portion thereof by a ditch." But it will be noted that the language just quoted is followed by the words, "and which division line has been marked and established prior hereto by the said respective parties."

It being now contended that the ditch contemplated by the appellees was the ditch intended to be referred to as the dividing line between the vendors and vendee, it becomes necessary to carefully consider the testimony set out in the record, in order to determine the relative claims of the respective parties to the cause. It will be observed that the contract treats the entire woodlot as containing about 15 acres more or less, and that all growing trees on said woodlot are sold, except trees on that portion located on the northwest side thereof and divided

from the southeast portion by a ditch. But it also appears
that the ditch referred to as being the dividing line is
further designated as representing a division line which
was marked and established, prior to the execution of the
contract, by the respective parties thereto; and the ques-
tion, therefore, naturally arises as to what division line
was so marked and established. On this point the testi-
mony of the contending parties is at wide variance.
Weighing in the balance in favor of the appellant is the
fact that Lot No. 1 embraces the northwest section of
the entire woodlot, and is therefore more in harmony with
the letter of the agreement than is the contention of the
appellees to the effect that the exception embraces Lots
Nos. 1 and 2, which in the aggregate comprise both the
northwest and northeast sections of the entire lot. But
against this apparent advantage in the construction of the
agreement is the fact that the testimony conclusively
shows that, at the time the agreement was entered into,
the appellant and the appellee with whom he dealt were
both unacquainted with the direction of the compass with
reference to the entire woodlot. This is shown by two
separate exhibits filed with their testimony, in both of
which, as compared with the actual survey to which ref-
erence has been made, the northeast section of the entire
woodlot is designated as being north. Another factor to
be considered is that the appellant admits his knowledge,
at the time the contract was executed, that the woodlot
was estimated by the appellee with whom he dealt to
contain at least 18 or 20 acres; and yet in the contract
the entire woodlot was estimated to contain 15 acres,
from which latter estimate the excepted area was sup-
posed to be deducted. As the actual survey shows, the
area conceded to have been embraced in the contract is
16¾ acres. Stated differently, if we follow the basis
of the estimate embraced in the contract, 1¾ acres more
area is accorded the appellant than the original contract
estimate of the entire woodlot, although the latter esti-
mate was subject to the exception; and under the con-
tract, literally construed, the acreage which the appel-

lant contemplated must have been substantially less than 15 acres. According to the record, the entire farm of the appellees contains about 160 acres; and the testimony of Mr. Mehring, one of the owners of the farm, is to the effect that the appellant offered $500 for all of the timber embraced in Lots 2 and 3. This offer was refused by the witness, who states: "I said, 'I won't part with it; I will have to have about half of the woodland.' He said he wouldn't move in for that. So, then, we didn't do nothing that day. About a month or so he came back again. He offered me $600 up to the little gutter again. I said, 'No, I can't take it. I have to have that land—the timber. I have got to have timber. I always need boards and stuff. I won't part with all of it.' So, then, I said, 'Tell you what we will do. I will sell you so much—this lower end, up to this gutter, for $400.'" In conflict with this evidence, the appellant testifies that the offer of $600 embraced the entire woodlot, "cutting everything clean"; that while he could not say positively, to the best of his knowledge he never made an offer of $500 for any part of the timber; that he never offered to buy only the timber embraced in lot No. 3. On cross-examination he corrected this testimony, however, by stating that at some time prior to the date of the agreement he did offer $600 for the timber, with the provision that the appellees could keep a small part of it.

As has been indicated, the survey and plat shows that the general course of one of the ditches is northeast and southwest, and the like course of the other is southeast and northwest. They both begin, approximately, on the eastern boundary of the woodlot, and meander in the direction of the northwestern boundary; they do not intersect, and both become extinct some distance from the northwestern boundary. Construed strictly therefore, neither ditch fully serves as a dividing line. The testimony of Mr. Mehring is that, at the time of the sale, and in the presence of the appellant, he cut an X mark on a tree. This tree is conceded to be a hickory, and the survey locates it as being near the northwest boundary of

the woodlot, at a point at which straight lines, drawn from the respective ends of the two ditches, and in their respective general courses, intersect. The appellant admits that the agreement was reached while he and Mr. Mehring were standing at the hickory tree, and that the latter marked the tree in his presence, but contends that the northern extended line and ditch, as contra-distinguished from the southern extended line and ditch, was agreed by the parties as the line of division.

In this situation it becomes necessary to invoke the general principle with reference to the construction of what has developed to be an ambiguous contract; and while, under that well-recognized principle, parol evidence is not admissible to vary, alter, or contradict the terms of a written instrument, such evidence is admissible when, as in the instant case, it appears from the instrument that a description of the subject-matter embraced therein is susceptible of the varying and conflicting constructions contended for by the respective parties. As stated in *Merriam v. United States,* 107 U. S. 437, 2 S. Ct. 536, 540, 27 L. Ed. 531: "It is a fundamental rule that in the construction of contracts the courts may look not only to the language employed, but to the subject-matter and the surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made." See, also, *Knabe v. Bowles,* 123 Md. 475, 484, 91 A. 567; *Marchant v. Hughlett,* 118 Md. 229, 239, 84 A. 380; *Southern Advertising Co. v. Metropole Co.,* 91 Md. 61, 46 A. 513; *Ess-Arr Knitting · Mills v. Fischer,* 132 Md. 1, 103 A. 91; *Phoenix Pad Mfg. Co. v. Roth,* 127 Md. 540, 96 A. 762; *Luria Bros. & Co. v. Klaff,* 139 Md. 586, 115 A. 849. And in *Reed v. Insurance Co.,* 95 U. S. 23, 30, 24 L. Ed. 348, the court said: "Although a written agreement cannot be varied (by addition or subtraction) by proof of the circumstances out of which it grew and which surrounded its adoption, yet such circumstances are constantly resorted to for the purpose of ascertaining the subject-matter and the stand-point of the parties in rela-

tion thereto. Without some knowledge derived from such evidence, it would be impossible to comprehend the meaning of an instrument, or the effect to be given to the words of which it is composed. This preliminary knowledge is as indispensable as that of the language in which the instrument is written. A reference to the actual condition of things at the time, as they appeared to the parties themselves, is often necessary to prevent the court, in construing their language, from falling into mistakes and even absurdities." 1 *Greenleaf on Evidence,* sec. 277; *Taylor on Evidence,* sec. 1082.

Applying these principles of law to the facts before us, it is our conclusion that the decree in this case should be affirmed. We reach this conclusion for the following reasons: (a) It is undisputed that the appellees, throughout their negotiations with the appellant, designed to except from the operation of the sale agreement a portion of the woodland as appurtenant to and for the use of the 160-acre farm which they admittedly own; and it is hardly conceivable that that design would be effected by the retention of an uncut acreage as small in area as that embraced in lot No. 1. (b) It is definitely shown by the testimony of the appellant that prior to the execution of the contract he offered the appellees one-half more than the agreed purchase price for the timber, less a "small part." It is true that he sets up, as a reason for the variance in the purchase price, the reservation of the lops and trees of the dimensions set out in the contract; but notwithstanding this amplification, it would seem an unreasonable variance in the consideration. Especially is this the fact when the appellee, Charles U. Mehring, gives the plausible reason for retaining a part of the timber in its virgin state, as hereinbefore quoted from his testimony. In addition to this, it would also seem that the "small part," which it was contemplated to accord to the appellees under the $600 offer, would hardly have been any smaller in area than the area embraced in lot No. 1. (c) It is shown that the ditch referred to in the contract as dividing the northwest and south-

east sections of the entire woodlot falls short of such description, in that, in point of fact, it does not extend the full length of the alleged division. Finally, it may be noted that in the brief of the appellant much stress is placed upon the words "more or less" found in the contract, and numerous authorities construing the effect of such verbiage are cited therein. In the view we take of the instant case, these citations are inapplicable. They do not apply in cases in which a dividing line, as contradistinguished from the area, of a given tract of land, is in dispute.

*Decree affirmed, with costs.*