# THE PHOENIX PAD MANUFACTURING COMPANY, A Body Corporate,

*vs.*

# ABRAHAM ROTH.

*Written contracts: construction; for the courts; preliminary negotiations; merger; parol evidence. Landlord and tenant: lease; use of electric current. Injunction and specific performance.*

Provisions in a lease that the landlord should furnish the tenant with electric current at a certain rate; that the tenant should take all the current that he shall use in conducting his business, from the landlord; and that the tenant would not do anything in or about the premises to controvert or affect the insurance thereon; *Held*, that such provisions do not obligate the tenant to use any electric current nor hinder him from installing and using a gas engine as its source of power for conducting his business. p. 544

All the principles applied to a bill for specific performance apply to the case of a bill for perpetual injunction, when that injunction accomplishes all the objects which could be accomplished by a successful prosecution of a formal bill for specific execution. p. 543

For the specific performance of a contract to be decreed, the contract must be definite and certain in all its terms, and must be free from all shade or color of ambiguity. p. 543

It must be so clearly proven as to satisfy the Court that it constitutes the actual agreement between the parties. p. 543

The construction of a written contract is for the Court. p. 543

In construing written contracts, a Court is entitled to place itself in the same position as that of the parties who made the contract, so as to view the circumstances as the parties viewed them, and to judge of the meaning of the words and of the application of the language to the thing described. p. 544

What parties to a contract meant to say, must be gathered from what they did say, viewed from the standpoint they then occupied.                                    pp. 543-544

In general all oral negotiations or stipulations between the parties to a written contract, preceding or accompanying its execution, are to be regarded as merged in it, and the latter treated as the exclusive medium of ascertaining the agreement by which the contracting parties bound themselves.      p. 545

*Decided January 14th, 1916.*

Appeal from Circuit Court No. 2 of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Wm. Milnes Maloy* (with whom was *George M. Brady* on the brief), for the appellant.

*Charles Clagett* and *Wm. L. Marbury,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellant is a corporation, and is engaged in the manufacture of coat pads. It owns a large four-story building, of late construction, located at the corner of Monroe and Eagle streets in Baltimore City. The building is equipped with large boilers for the generation of electric light and power, and which produce much more electric current than the appellant requires for its business. The appellant rented certain floor space in the building to tenants to whom it furnished the excess power at an agreed price.

The appellee is a shoe manufacturer, and prior to June, 1914, his place of business was located on Baltimore street. The power which he required in the conduct of his business

was furnished by a gas engine. On the 22nd of June, 1914, he entered into a contract by which he rented about one thousand feet of the third floor of the appellant's building. He took immediate possession of the rented premises, and shortly before the institution of this suit installed a gas engine, and was about to put it into operation. A dispute had arisen between the parties as to the right of the appellee to install and operate the engine. The appellant. claimed that, both under the contract of June 22, 1914, and under a subsequent oral contract, which will be presently considered, the appellee was prohibited from installing and operating the engine. The appellee contended that it was more economical and convenient to him to use the gas engine in the conduct of his business, and that he was under no obligation not to use it. The parties being unable to agree as to their respective rights and obligations under the contracts, the appellant filed a bill in Circuit Court No. 2 of Baltimore City for an injunction to restrain the appellee from erecting and operating the gas engine on the rented premises. An injunction was issued as prayed. The appellee answered the bill and moved for a dissolution of the injunction. The testimony was taken in open Court. This appeal was taken by the appellant from an order passed on June 29, 1915, dissolving the injunction and dismissing the bill.

The appellant rests its right to the injunction upon the allegations contained in the bill that the installation and the operation of the gas engine on the rented premises would constitute: *first,* a violation of two provisions of the agreement of June 22, 1914; and *secondly,* a violation of the subsequent oral agreement set out in the bill. The first contention is one of law,—involving the construction of a written contract, and the second is one of fact,—depending upon the evidence appearing in the record. 1. The two clauses of the written contract upon which the plaintiff relies are here transcribed: the landlord (*a*) "to furnish said tenant with electric current at the rate of six cents ($.06) per kilowat. The said tenant to take all the current that he uses in

conducting his business from the landlord." (*b*) The tenant: "Not to do anything in or about the said premises that will contravene or affect the insurance thereon."

We do not deem it necessary to discuss the evidence relating to the second of these clauses, because it is clear that it does not establish the allegation that the installation and operation of the gas engine would contravene or affect the insurance on the building.

The bill seeks by indirection to compel the specific performance of the contracts therein alleged, and the principles which apply to bills for specific performance are applicable to this case. In *Gurley* v. *Hiteshue*, 5 Gill, 223, it was said: "All the principles which apply to the case of a bill for specific performance apply with equal force to the case of a bill for perpetual injunction, when that injunction accomplishes all the objects which could be accomplished by a successful prosecution of a formal bill for a specific execution." One of the familiar principles applicable to suits for specific performance is "that the contract must be definite and certain in all its terms, and must be free not only from all ambiguity, but likewise free from all shade or color of ambiguity. *Miller's Eq. Pro.*, sec. 683, and cases in notes 1 and 3. It must be so clearly proven as to satisfy the Court that it constitutes the actual agreement between the parties. *Horner* v. *Woodland*, 88 Md. 512. If this were not the rule courts might enforce precisely what the parties never did intend or contemplate. *Waters* v. *Howard*, 8 Gill, 277; *Bamberger* v. *Johnson*, 86 Md. 41; *Dixon* v. *Dixon*, 92 Md. 432. The construction of the written contract is a question of law for the Court. (*Roberts* v. *Bonaparte*, 73 Md. 191.) It is the duty of the Court to ascertain and declare the intention of the parties as expressed in the contract. "Obviously, the most simple and satisfactory way to ascertain that intention is to read what they have written in the light of surrounding circumstances existing at the time. What they meant to say must be gathered from what they did say viewed from the

standpoint they then occupied. *Bond* v. *Humbird,* 118 Md. 650.

In the construction of written contracts the Court "is entitled to place itself in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and to judge of the meaning of the words and of the correct application of the language to the things described." *Nash* v. *Towne,* 5 Wallace, 699.

Reading the language used in the clause under consideration, in the light of these principles, we find no uncertainty or ambiguity in the terms of the contract. The clause refers to the electric current, but there is no absolute obligation assumed by the defendant to use this current. The obligation assumed by him is to take from the plaintiff all electric current, whether for lighting or power, he might use in conducting his business. Whether he should use electric current for any purpose in the conduct of his business was optional with him, but such current as he did use he was under an obligation to take from the plaintiff at the price fixed by the contract. There is no express prohibition against the defendant's using any other power, and none can be implied from the terms used in this clause. We are unable, by construction, to read into this contract a prohibition against the use of the gas engine which the defendant proposes to operate. This construction is in harmony with the statement contained in the opinion in *Metropolitan Electric Supply Co.* v. *Ginder,* 70 L. J. Ch. Div. 862. Commenting on a clause in a contract that "the consumer agrees to take the whole of the electric energy required for the premises mentioned below from the company for a fixed period of not less than five years" the Court said: "There is no affirmative contract here to take at all. The defendant does not agree that he will take any energy from the plaintiff company. He says he will take the whole of the energy required. It is competent to him to burn gas if he likes, and to require none."

At the trial the plaintiff, over the objection of the defendant, introduced oral evidence of conversations between the

agents or officers of the plaintiff and the defendant to prove that it was understood between the parties that the gas engine should not be operated in the building. This testimony was flatly contradicted by the defendant and other witnesses, and the fact attempted to be proved is left very much in doubt. But this evidence was inadmissible. The general and familiar rule is, as stated in *Bladen* v. *Wells,* 30 Md. 577, "that all oral negotiations or stipulations between the parties preceding or accompanying the execution of a written instrument are to be regarded as merged in it, and the latter treated as the exclusive medium of ascertaining the agreement by which the contracting parties bound themselves."

There is a class of cases in which, within certain limits, parol evidence is admissible to explain written instruments. When such evidence is receivable for that purpose is stated in 1 *Greenleaf on Evidence,* secs. 285-288. The cases of *Walston* v. *White,* 5 Md. 297, and *Shreve* v. *Shreve,* 43 Md. 382, are concrete examples of circumstances under which parol evidence may or may not be admitted to aid the Court in the interpretation of written instruments.

2. There remains for consideration the subsequent oral agreement relied on as a ground for the injunction. That is stated in the bill as follows: "Sometime after the defendant had become a tenant in accordance with the terms of the lease, he sought to erect a gasoline engine for the purpose of generating power. The complainant objected, fearing the loss of its opportunity to furnish service, believing that its insurance and the insurance of other tenants, there being three tenants in all, would be injuriously affected. The defendant claimed that his current bills were running higher than he anticipated at the time of making the lease. He did not complain that there was any overcharge. To avoid a controversy and litigation, the parties agreed that while in no wise affecting the lease, the complainant would allow to the defendant for the current bill for electric service as furnished and for bills thereafter a discount or reduction of 15 per

cent., the defendant promising not to seek to install any engine or to use any motive power other than that furnished by the complainant. This understanding was accepted and agreed to, and has since been carried out."

The alleged agreement is not clearly established by the proof. Mr. Van Vorst, the manager of the plaintiff company, testified that he explained to the defendant "about giving him a reduction of 15 per cent. of his bills. He was then perfectly satisfied, and said at that time that would settle the gas engine story forever as long as he was a tenant of the building. He was perfectly satisfied." The defendant positively denied that he made any agreement to give up his right to use the gas engine. Mr. Gulden, the president of the plaintiff company and the only other witness who testified with reference to the agreement, said that he made the arrangement with the defendant to reduce the price of the electric current, and that he did not remember that anything was said at that time about the gas engine. He further testified that he did not intend to alter or change the rights or obligations of the parties under the lease. The contract alleged is not proved with such clearness and certainty as would warrant a decree for specific performance.

Our conclusion is that the order of the lower Court was correct and should be affirmed.

*Order affirmed, with costs.*