RUHL *v.* F. A. BARTLETT TREE EXPERT CO.

[No. 388, September Term, 1966.]

120

*Decided January 5, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, OPPENHEIMER, McWILLIAMS, and FINAN, JJ.

*Robert C. Thompson* for appellant.

*John A. McGuinn,* with whom was *Henry P. Turner* on the brief, for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The question presented is the validity of a restrictive covenant in an employment contract between a company engaged in the business of tree care and one of its area managers, under which the employee agreed not to compete with his employer for a period of two years after the termination of his

employment within the area of five Eastern Shore counties and a contiguous county in Delaware, the territory in which the employee worked for the company. The company's suit for damages and injunctive relief was tried before Chief Judge Carter in the Circuit Court for Talbot County.

The case was tried on a written stipulation of the parties and testimony was limited to the issue of whether the parties had agreed to a modification of the original contract respecting compensation or whether there had been a material breach by the company in changing the compensation. The appellant, Ruhl, while not agreeing with Judge Carter's findings of fact on the issue on which testimony was taken, properly concedes that the findings were not clearly erroneous. For the purposes of this appeal, therefore, the facts are not in dispute and the sole issue is the validity of the restrictive covenant. The trial judge ruled that the contract of employment, including the covenant not to compete, was valid, found that Ruhl impliedly agreed to the modification of his employment contract by the substitution of a new pay plan for the former one, awarded the appellee damages in the amount of $4420, the amount stipulated by the parties in the event of a decision against Ruhl, and enjoined Ruhl, his agents and employees, from engaging in any way in any business or operation for the care, preservation or treatment of trees in competition with the business carried on by the appellee for two years from April 7, 1965 (the date Ruhl ceased receiving compensation) in the six-county area covered by the restrictive covenant.

The appellee, The F. A. Bartlett Tree Expert Company (Bartlett), a Connecticut corporation, has for many years engaged in the business of general tree care, surgery and line clearance work in several states and has been doing business in the Easton, Talbot County, area for the last twenty-five years. The principal nature of the business done out of the Easton office consists of tree care work performed for private home owners and municipal authorities. The business is highly competitive with similar companies operating in the area. In soliciting prospective customers, Bartlett submits bids taking into consideration the labor involved, machinery to be utilized, materials to be expended, and percentage of profit to be realized on each job.

On December 29, 1961 Ruhl and Bartlett executed a written contract of employment, which contains the restrictive covenant to which reference has been made. The six-county area assigned to Ruhl, and covered by the agreement not to compete, is Caroline, Queen Anne's, Kent, Dorchester and Talbot Counties in Maryland and Kent County, Delaware. The contract provides that it may be terminated without cause at any time by either party giving 10 days written notice of intention to terminate to the other party.

As area manager of Bartlett's Easton office, Ruhl solicited tree care work in the six-county area, supervised such work and was in charge of the administration of the Easton office. He was compensated pursuant to the schedule attached to the contract of employment. During his 3½ years employment as area manager at Easton, Ruhl contacted old customers of Bartlett and potential new customers, suggested tree work that should be done and quoted prices. Sales leads were furnished him from Bartlett's office and secured through Bartlett's advertising. Some business was procured directly by Ruhl. Personal contracts between Ruhl and the customers were essential to the continued well-being of Bartlett's operation in the area. From October, 1961 to January, 1964, Ruhl was the only person in Bartlett's Easton office acting as a sales representative; thereafter, an additional sales representative was added.

As Bartlett's area manager, Ruhl was issued a "Standard Practices" manual describing in detail practices and procedures in the care and maintenance of trees approved by Bartlett. He was also issued weekly laboratory releases from Bartlett's main office in Stamford, Connecticut giving current information developed by Bartlett on the diagnosis and treatment of particular tree diseases and problems. He also attended division meetings where information on sales and operations was exchanged with other area managers. When Ruhl was appointed area manager in 1961 he was given a card index containing the names and addresses of all customers for whom Bartlett had previously done work in the six-county area, the amount charged each of them and the date when the work was done.

The business done by the Easton office in the area assigned Ruhl amounted to $57,300 in 1964. Of this amount $11,700 or

20% represented business from customers who had never before done business with Bartlett; $45,600 or 80% represented work for persons who had done business with Bartlett on one or more occasions prior to 1964; $34,300 or 60% of the 1964 volume represented business from customers who had done business with Bartlett prior to 1961 when Ruhl became area manager. In 1963 Ruhl's commissions averaged 22.7% on a gross volume of $58,467.84 or a gross commission of $13,272.19. In 1964 his average commissions were 17% on a gross volume of $60,418.80, amounting to $10,271.

Ruhl was trained in the tree business by his uncle from the age of fourteen. He has only a high school education. In 1959, when he was twenty, he was employed by Bartlett as a sales representative and in other positions at other locations until his appointment as area manager at Easton in October, 1961. The tree business is the only means of livelihood in which Ruhl has ever engaged. On April 26, 1965, after his resignation from Bartlett's organization, he became the sole proprietor of Wye Tree Experts, whose business is all phases of the care of shade trees. This company operates in all the six counties originally assigned to Ruhl by Bartlett. Since establishing his company, Ruhl has solicited and obtained tree care work within this six-county area from many persons who, prior to Ruhl's resignation, were Bartlett customers. The total business done by Wye Tree Experts in 1965 amounted to approximately $27,000 of which about two-thirds was derived from former Bartlett customers.

This Court has had a number of cases involving the validity of restrictive covenants in a contract of employment. Covenants of this nature are in restraint of trade; the test is whether the particular restraint is reasonable on the specific facts. The general rule in Maryland, as in most jurisdictions, is that "restrictive covenants in a contract of employment, by which an employee as a part of his agreement undertakes not to engage in a competing business or vocation with that of his employer on leaving the employment, will be sustained 'if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on

the employee or disregard the interests of the public.' " *Mac-Intosh v. Brunswick Corp.*, 241 Md. 24, 31, 215 A. 2d 222 (1965). See also *Silver v. Goldberger*, 231 Md. 1, 6, 188 A. 2d 155 (1963) and cases therein cited; Restatement, *Contracts*, §§ 515, 516 (f).

The development of the law on this subject is analyzed in Blake, "Employee Agreements Not to Compete," 73 Harv. L. Rev. 625 (1960). The multitude of cases are classified in two encyclopedic annotations in 41 A.L.R.2d 15 (1955) and 43 A.L.R.2d 94 (1955). There is no arbitrary yardstick as to what protection of the business of the employer is reasonably necessary, no categorical measurement of what constitutes undue hardship on the employee, no precise scales to weigh the interest of the public. The decisions in this State and in other jurisdictions are helpful, but, as in so many other fields of the law, the determination must be made on the particular circumstances.

In the case before us, Bartlett is engaged in a highly competitive industry. The contract of employment refers to the trade secrets to which Ruhl was to have access, but, on the record, no trade secrets were involved. See *Operations Research, Inc. v. Davidson & Talbird, Inc.*, 241 Md. 550, 556-58, 217 A. 2d 375 (1966). Compare *Space Aero Products Co. v. R. E. Darling Co.*, 238 Md. 93, 105-113, 208 A. 2d 74, *cert. denied*, 382 U. S. 843 (1965). However, the nature of Ruhl's duties brought him into direct and continuous relationship with Bartlett's customers. When he entered into the employment contract with Bartlett in 1961, Ruhl was given the list of the persons in the area for which the company had previously done work, with details of the work performed. After Ruhl went into business for himself, in 1965, the greater part of his work volume was derived from former Bartlett customers.

This Court has recognized the importance of the personal relationship between the employee and his employer's customers whom the employee serves on a particular route, when the element of competition in the sale of the product was less significant than the employee's relationship with the persons he served. In such cases, restrictive covenants were held valid when they were found reasonable as to duration and area. *Western Md.*

*Dairy v. Chenowith,* 180 Md. 236, 23 A. 2d 660 (1942) ; *Tolman Laundry v. Walker,* 171 Md. 7, 187 Atl. 836 (1936) ; *Deuerling v. City Baking Co.,* 155 Md. 280, 141 Atl. 542 (1928). In *Tawney v. Mutual System of Md.,* 186 Md. 508, 521, 47 A. 2d 372 (1946), in which restrictive covenants between a small loan company and its employees were held invalid because of the unreasonable scope of the area in which competition was excluded, Judge Henderson said, for the Court: "We think the route cases are distinguishable, for while the route is defined in terms of area, exclusion from that area is only a means of preventing use of the lists of customers." In *Silver v. Goldberger, supra,* an employment agency business was involved; the Court affirmed the lower court's dismissal of the employer's bill for an injunction. Judge Horney, for the Court, said at 231 Md. 8: "Had the appellant been able to show that his former employees had or were likely to take some of his clients away from him, the situation might have been different * * *" In all these cases, on varying facts, it is the extent and importance of the personal contact of the employee with the customers to which the Court has looked as largely determining whether the restraint is a reasonable one for the protection of the employer's business.[1]

---

1. The employer's legitimate interest in endeavoring to protect the customer contacts which he has been able to develop is well stated in Blake, "Employee Agreements Not to Compete," 73 Harv. L. Rev. 625, 653-54 (1960):

"In almost all commercial enterprises, except in the few cases in which the market approaches the ideal of perfect competition, contact with customers or clientele is a particularly sensitive aspect of the business. In smaller concerns, or even in large businesses with a relatively small clientele, sales and customer service are typically handled largely by the proprietor or one or more of the partners or trusted officers, depending upon the form of business organization. In most businesses, however, as the size of the operation increases, selling and servicing activities must be at least in part decentralized and entrusted to employees whose financial interest in the business is limited to their compensation. The employer's sole or major contact with buyers is through these agents and the success or failure of the firm depends in part on their effectiveness.

The validity of a restrictive covenant, if reasonable as to duration and area, has been upheld by courts in other jurisdictions in decisions involving businesses of the same kind as that in which, in the case before us, Bartlett is engaged. *Davey Tree Expert Co. v. Ackelbein,* 233 Ky. 115, 25 S. W. 2d 62 (1930); *New England Tree Expert Co. v. Russell,* 306 Mass. 504, 28 N. E. 2d 997 (1940); *Davey Tree Expert Co. v. Ahlers,* 124 N. J. Eq. 175, 200 Atl. 1012 (1938); *Davey Tree Expert Co. v. Back,* 137 Misc. 702, 244 N. Y. S. 239 (Sup. Ct. 1930). We find that, in this case, Bartlett had a protectible employer interest.

Even though the employer has a legitimate interest in the protection of its clientele, the restrictive covenant will not be enforced if under all the circumstances the covenant is unduly restrictive of the employee's freedom. "[T]he right to labor or use one's skill, talents, or experience for one's own benefit, or furnish them to another for compensation, is a natural and inherent right of the individual * * *" *Deuerling v. City Baking Co., supra,* 155 Md. at 284. Ruhl has been in the tree business since he was fourteen years of age. He has had only a high school education, and the tree business is the only means of livelihood in which he has ever engaged. The enforcement of the restrictive covenant, in addition to the payment of damages, will impose a hardship upon him. Yet there are countervailing considerations.

In his services for Bartlett, Ruhl received training and ex-

Although the employee's job may be limited to servicing an existing customer route or list, or dealing with those who come to the employer's place of business or do business by mail or telephone, in many cases he is expected to bring in new business. In any of these situations, the possibility is present that the customer will regard, or come to regard, the attributes of the employee as more important in his business dealings than any special qualities of the product or service of the employer, especially if the product is not greatly differentiated from others which are available. Thus, some customers may be persuaded, or even be very willing, to abandon the employer should the employee move to a competing organization or leave to set up a business of his own."

perience which undoubtedly increased his proficiency in his chosen business. His association with Bartlett's customers, in all probability, will be useful to him in the future, as it has been during the initial, prohibited period of competition. Moreover, the fact that the covenant into which he entered has a definite term during which competition is prohibited, in one important sense, is of benefit to Ruhl. Even in the absence of trade secrets, under certain circumstances, a former employee may be enjoined from using confidential information obtained during the course of his employment, because of an implied contractual obligation. See *Operations Research v. Davidson, supra,* 241 Md. at 567-68; *Space Aero v. Darling, supra,* 238 Md. at 115, and authorities therein cited; Turner, *The Law of Trade Secrets* 273-300 (London 1962). In such cases, where the circumstances warrant, an injunction may be granted for an indefinite term. See *Space Aero,* 238 Md. at 122-28. In the case before us, the restrictive covenant impliedly limits Bartlett as it expressly limits Ruhl. After the expiration of the two year period, Ruhl is free to compete with Bartlett anywhere.

An essential condition to the validity of a restrictive covenant in an employment contract is that it causes no substantial injury to society. *Tawney, supra,* 186 Md. at 519; *Space Aero, supra,* 238 Md. at 124-25; Blake, *supra,* 73 Harv. L. Rev. 686-87. In *Operations Research, supra,* 241 Md. at 575, we said:

> "There are interests of public policy as well as of private rights to be balanced in the category of cases in which this litigation falls. It is important to our economic system as well as to employers that proprietary interests of businesses be properly protected; it is important to the free competition basic to our national development as well as to the individual rights of employees who want to go into business for themselves that their spirit of enterprise be not unduly hampered. It is the facts in the particular case which weight the scales."

In this case, the tree business is highly competitive, with companies similar to Bartlett operating in the area involved. No danger of a monopoly is apparent. On the facts, we find that

the restrictive covenant is not injurious to the public interest, and that it is valid, if the period of time and area involved are not unreasonable.

Two years is a long time in the life of a young man with a family to support to be precluded from engaging in the only business which he knows in the area in which he grew up and where he lives. Had Ruhl's employment been terminated by Bartlett through no fault of Ruhl's, a different legal situation might well have been presented. See *MacIntosh, supra,* 241 Md. at 30-31. However, the court below found that there had been no material breach of the contract by Bartlett in changing Ruhl's compensation, and that Ruhl accepted the change in terms. These findings of fact are not challenged on the appeal. It was Ruhl, therefore, who terminated the contract by his voluntary resignation.

As was pointed out in *New England Tree Co. v. Russell, supra,* 306 Mass. at 510, the tree service business is different from enterprises where service is rendered on defined routes daily or weekly; the services of tree companies' salesmen and supervisors are probably not rendered to most of the customers more than once or twice a year. In that case, a non-competitive agreement by the employee for three years after termination of his employment was held reasonable as to time. In *Davey Tree Expert Co. v. Ahlers, supra,* a two year period was held reasonable.

The area involved is that in which Ruhl actively worked for Bartlett during his employment. It is an area in which the geographical and economic conditions are substantially similar. Unlike the situation in *Tawney,* the six counties do not include a densely populated area such as metropolitan Baltimore, in which there were several hundred thousand persons with whom the employer had no association of any kind. In *Ahlers,* the restrictive covenant applied to any of the territories in which the employee had worked; the Vice-Chancellor restricted the scope of the injunction to three counties in New Jersey and two in New York, the area in which the employee had spent most of his time while in the employer's service. In *New England Tree Expert Co., Inc., supra,* the prohibited area in the injunction was the part of New England covered intensively by the company's so-

licitors. In *Davey Tree Expert Co. v. Ackelbein, supra,* and *Davey Tree Expert Co. v. Back, supra,* areas embraced by the restrictive covenant and held reasonable by the court were far larger than the territory here involved.

On the particular circumstances of the case before us, we find that the provisions of the restrictive covenant as to area and duration were not unreasonable and that the covenant is valid.

*Judgment and decree affirmed; costs to be paid by appellant.*